[Civ. No. 14354. Third Dist., Dec. 3, 1974.]

ROBERT CATRICALA, Plaintiff and Appellant, v.
STATE PERSONNEL BOARD, Defendant and Appellant.

**COUNSEL**

Loren E. McMaster and Michael D. Stump for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Frank A. Iwama, Deputy Attorney General, for Defendant and Appellant.

**OPINION**

**REGAN, J.**—Both the State Personnel Board ("Board") and the petitioner appeal from an order granting a peremptory writ of mandamus which set aside the Board's determination of punishment in a disciplinary proceeding and remanded the case to the Board for reconsideration.

On May 12, 1972, petitioner, an employee of the Office of State Printing, was served with a notice of punitive action, demoting him indefinitely from the position of offset press assistant to printing trades assistant for causes set forth in Government Code section 19572.[1]

On September 7, 1972, the Board adopted the proposed decision of the hearing officer which sustained the actions of the Office of State Printing in denying petitioner's request for sick leave and the indefinite demotion.[2] A petition for rehearing was denied on November 16, 1972.

On January 30, 1973, petitioner filed a petition for writ of mandamus seeking review of the Board's decision and an order to set aside the decision and penalty imposed. After further proceedings the court, on March 20, 1973, filed its notice of intended decision. The court found there was substantial evidence to sustain the Board's decision. The court also found, however, that there had been a clear abuse of discretion in imposing the penalty, and remanded the matter to the Board for the purpose of re-assessing the punishment to be imposed. Judgment was granted on April 25, 1973, and the writ was issued on May 10, 1973.

On June 14, 1973, the Board reconsidered its action and modified the penalty to a one-year demotion.

[1]In particular, the notice cited the following four subdivisions of the code section: "(d) Inexcusable neglect of duty (f) Dishonesty (j) Inexcusable absence without leave (t) Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment."

[2]The hearing officer specifically found that petitioner was guilty of dishonesty.

On June 19, 1973, petitioner filed a motion for order compelling the Board to reconsider further the penalty imposed upon petitioner. On August 7, 1973, the trial court heard arguments by counsel, and entered its findings that the one-year demotion was still so excessive that it was an abuse of discretion. The order granting a peremptory writ of mandamus was entered on September 6, 1973.

Both parties appeal.

On April 28, 1972, at approximately 11 p.m., petitioner, an employee of the Office of State Printing, telephoned his supervisor Joseph Cerniglia and indicated that he would not be able to report for work that evening because he was suffering from an intestinal disturbance and nausea. Cerniglia relayed this information to two other supervisors at the printing plant, Wayne Nichols and Ernest Thomas.

Petitioner operates a cardroom during off-duty hours at Duffy's Tavern as a secondary source of income. On his way home that evening, Cerniglia, at Thomas' request, drove by Duffy's Tavern but did not see petitioner's car.

At approximately 1 a.m., Nichols, at the direction of Thomas, went to Duffy's Tavern and observed petitioner playing cards. Thomas was somewhat suspicious because petitioner was developing a pattern of taking Friday nights off. Upon receiving Nichols' report, Thomas went to Duffy's where he also observed petitioner playing cards.

Petitioner testified that he became ill on the afternoon of Friday, April 28, and thought he might have food poisoning. He asked his roommate, Fuerterer, to tell Donald Mills, petitioner's employee at the cardroom, that he would not be at Duffy's Tavern that evening. He called Cerniglia at approximately 10:30 to 11 p.m. to advise him of the illness.

Mills testified that he was dealing cards at Duffy's Tavern on the evening of April 28. Around 11:15 or 11:30 p.m. Mills received a call from his wife about a prowler at their home. When Mills left to investigate, Fuerterer, who was at Duffy's, went to get petitioner to take over the card game. Shortly thereafter, petitioner arrived at Duffy's and dealt cards until about 1:15 a.m. when Mills returned and then left the premises. Mills and a bartender at Duffy's stated that petitioner appeared ill and was pale and drawn.

Petitioner also testified he felt it would have been unsafe for him to be around a moving press in his condition. He further stated that he felt obligated to substitute for Mills, despite his illness, since the card game was Mills' sole support.

## I

The Board contends the court erred in concluding that it had committed a clear abuse of discretion in imposing the modified penalty of a one-year demotion.

■ The principles regarding the imposition of administrative penalties are set forth in *Blake* v. *State Personnel Board* (1972) 25 Cal.App.3d 541, 553 [102 Cal.Rptr. 50]: "It is settled that the propriety of a penalty imposed by an administrative agency is a matter resting in the sound discretion of the agency and that its decision will not be disturbed unless there has been an abuse of discretion. [Citations.] Legal discretion means an impartial discretion taking into account all relevant facts, together with legal principles essential to an informed and just decision. The term 'judicial discretion' has been defined as ' "an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, *to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice."* ' (Italics supplied.) [Citations.] The fact that reasonable minds may differ as to the propriety of the penalty imposed will fortify the conclusion that the administrative body acted within the area of its discretion. [Citation.] On the other hand, if the penalty imposed was under all the facts and circumstances clearly excessive, the court is not powerless to act. [Citation.]" (See also *Nightingale* v. *State Personnel Board* (1972) 7 Cal.3d 507, 515 [102 Cal.Rptr. 758, 498 P.2d 1006].)

■ While mandamus will not lie to control the discretion exercised by a public board, it will lie to correct an abuse of discretion by such board. (*Carroll* v. *Civil Service Commission* (1970) 11 Cal.App.3d 727, 733 [90 Cal.Rptr. 128].)[3]

The Board contends the modified penalty of a one-year demotion imposed on petitioner for his act of dishonesty concerning the sick leave in question does not constitute a clear abuse of discretion by the Board nor is the penalty manifestly unjustified. (See *Cadilla* v. *Board of Medical Examiners* (1972) 26 Cal.App.3d 961, 967-968 [103 Cal.Rptr. 455]; *Brown* v. *Gordon* (1966) 240 Cal.App.2d 659, 667 [49 Cal.Rptr. 901] [reviewing court cannot interfere with imposition of a penalty by an ad-

---

[3]The trial court here was quite aware of the limits of its authority, i.e., was there an abuse of discretion. As stated in *Carroll:* "The [trial] court properly refrained from fixing or even suggesting the nature of the penalty to be imposed after reexamination." (11 Cal.App.3d at p. 732.)

ministrative tribunal unless there is an "arbitrary, capricious or patently abusive exercise of discretion"].)

The penalty imposed for the misuse of one day's sick leave was a demotion to a position which petitioner had held seven years prior to this incident (i.e., printing trades assistant). The petitioner had been employed by the Office of State Printing for 14 years, the last 7 of which he filled the job category of offset press assistant. The demotion reduced petitioner's annual income by approximately $2,000. With the exception of the incident involved here, petitioner's job performance over the years apparently met expected standards.

The trial court took judicial notice of the Board's publications, Supervisor's Handbook, A Guide to Employee Discipline, 1965 and 1971 editions. These handbooks are directory only. (See foreword to the handbooks.) Nevertheless, the 1965 edition does list recommended or suggested penalties for specific acts.[4] The minimum suggested for absence from duty for less than five consecutive working days without permission or without adequate justification was a letter of reprimand for the first offense and the suggested maximum was a suspension of from 1 to 10 days. For a second offense, the recommended minimum was a 1 to 10 calendar days suspension and the maximum was suspension from 11 to 90 calendar days. It was not until a third offense that penalties as severe as a reduction of pay within a class up to dismissal were recommended.

In its memorandum opinion, the trial court states: "The Court believes, however, that there has been a clear abuse of discretion in imposing the penalty. While the 1965 guidelines published in the Supervisor's handbook are not repeated in the 1971 revision, nevertheless, they are not repudiated and do provide an *objective standard*. The punishment here given goes far beyond that suggested." (Italics added.)

In this same connection, the court in *Blake* v. *State Personnel Board, supra,* 25 Cal.App.3d at page 554, comments as follows: "We note also that the State Personnel Guide to Employee Discipline, a copy of which

---

[4]The 1971 handbook entirely eliminates 12 pages of tables detailing specific actions calling for disciplinary action and suggesting ranges of punishment for first, second and third offenses therefor as these appeared in the 1965 edition. The ranges of punishment apparently listed, in their order of severity, were seven: Warning; letter of reprimand: suspension (1 to 10 days); reduction of pay within the class; suspension (11 to 90 days); demotion to a lower class; and, dismissal. The 1971 edition is entirely general and states that "it is impossible to develop any magic formula that will automatically determine the proper corrective action to be taken in every situation. Each case must be considered with discretion and decided upon its own individual merits and attending circumstances."

was received in evidence, suggests penalities for a first offense under subdivision (m) of a 'warning' and a maximum of a 'letter of reprimand.' While the manual does not circumscribe the agency's discretion and penalties in excess of those suggested would not be unreasonable as a matter of law, the manual is evidence of the Board's policy and may, therefore, be properly considered in determining whether the penalty imposed in the instant case was excessive as a matter of law. (See *Harris* v. *Alcoholic Bev. etc. Appeals Bd., supra,* 62 Cal.2d 589, 597 [43 Cal. Rptr. 633, 400 P.2d 745].)"

It is possible that abuse of sick leave has assumed proportions that justify much stronger disciplinary action than recommended between 1965 and 1971. ■ However, the trial judge was correct in his conclusion that the handbook suggestions suggested a considered policy as to what was reasonably appropriate in the average case. We cannot conceive that abuses of sick leave have increased so dramatically since 1965 that resort to the most severe punishment short of dismissal is now justified for a first offense when in 1971 it would most probably not be resorted to until a third offense had occurred. In this light a demotion for one year for the first offense involved herein appears vindictive, capricious and arbitrary. (Cf. *Brown* v. *Gordon, supra,* 240 Cal.App.2d at p. 667.) We conclude, as did the trial court, that the penalty imposed was a patent abuse of discretion and, for a first offense, so clearly excessive as to constitute a patent abuse of discretion. (Cf. *Blake* v. *State Personnel Board, supra; Vielehr* v. *State Personnel Bd.* (1973) 32 Cal.App.3d 187, 196 [107 Cal.Rptr. 852].)

## II

Petitioner contends the trial court erred in determining that the Board's decision to impose punitive action (in any degree) was supported by the findings.

The decision of the hearing officer, adopted by the Board, concluded that petitioner was dishonest. (Gov. Code, § 19572, subd. (f).) Petitioner contends that to support such a determination, there must be three specific findings, along with the appropriate evidence to support them: (1) petitioner called in sick; (2) he was not, in fact, sick and was able to work at his job; and (3) petitioner had bad faith and a disposition to cheat or deceive. (See *Gee* v. *California State Personnel Bd.* (1970) 5 Cal.App.3d 713, 718-719 [85 Cal.Rptr. 762] ["dishonesty" means a disposition to deceive]; see also *Hogg* v. *Real Estate Commissioner* (1942) 54 Cal.App. 2d 712, 717 [129 P.2d 709].) Petitioner argues that there was no finding, or evidence, on elements (2) and (3).

In its memorandum opinion, the trial court further states: "The Court is convinced that the circumstantial evidence here involved goes far beyond the letter in the Martin case (*Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 584-585 [103 Cal.Rptr. 306]) and the empty liquor bottles in the *Pereyda* case (*Pereyda* v. *State Personnel Bd.* (1971) 15 Cal.App.3d 47, 51 [92 Cal.Rptr. 746]).

". . . . . . . . . . . . . . . . . .

"Here, however, we are dealing with a *fact* from which of itself it reasonably may be inferred that petitioner was not ill, the exact question at issue. There is, accordingly, substantial evidence to sustain the finding of the State Personnel Board in this regard." (Italics added.)

In other words, the fact that petitioner went to his cardroom, even though he had called in sick, speaks for itself. Thus, it is irrelevant that the referee disbelieved petitioner. ▮ We hold that the findings adequately support the Board's decision to impose punitive action. (Cf. *Gee* v. *California State Personnel Bd.*, *supra*, 5 Cal.App.3d at p. 719 ["dishonesty" also denotes an absence of integrity].)

In *Martin* v. *State Personnel Bd.* (1972) 26 Cal.App.3d 573, 577 [103 Cal.Rptr. 306], we stated: "[T]he factual determinations of the State Personnel Board—a statewide agency which was created by, and which derives its adjudicating power from, the state Constitution—'are not subject to re-examination in a trial de novo but are to be upheld by a reviewing court if they are supported by substantial evidence.' [Citations.] 'The substantial evidence rule is equivalent to the concept of "'substantial evidence in the light of the whole record.'"' [Cit⁀ ⁀ns.]' [Citation.]

"When it reviews the evidence before the Sta.. Personnel Board, the superior court exercises the same function as this court. [Citation.] Neither court can reweigh the evidence. [Citation.] 'In following the substantial evidence rule we are obligated to consider the evidence in the light most favorable to the Board, giving to it the benefit of every reasonable inference and resolving all conflicts in its favor.' [Citation.] 'Inferences based upon circumstantial evidence are sufficient to support a finding.' [Citation.]"

Here, there was substantial evidence to support the implied findings that petitioner was not sick and was dishonest in the circumstances.

Petitioner's reliance upon *Martin* v. *State Personnel Board*, *supra*, 26 Cal.App.3d at page 584, and *Pereyda* v. *State Personnel Board* (1971) 15 Cal.App.3d 47, 51-52 [92 Cal.Rptr. 746], is misplaced. Both cases

held, inter alia, that the Board's disbelief of the employee's testimony cannot create evidence to the contrary. As we have previously pointed out, however, the hearing officer's disbelief of the petitioner's story in this case is irrelevant for the decision was based on evidence *other than* disbelief of the petitioner. We conclude that the findings were not devoid of evidentiary support nor based upon inference arbitrarily drawn and without reasonable foundation. (See *Lorimore* v. *State Personnel Board* (1965) 232 Cal.App.2d 183, 187 [42 Cal.Rptr. 640].)

The judgment is affirmed in its entirety. The parties to bear their own costs.

Friedman, Acting P. J., and Good, J.,* concurred.

A petition for a rehearing was denied December 19, 1974.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.