Opinion
 

 REYNOSO, J.
 

 The questions we face are these: First, may the California Highway Patrol dismiss from its employ a patrolman who: (1) attended (with expectations of sexual gratification) and did participate in a sexual act at an advertised commercially sponsored transvestite “party” for which he paid an attendance fee; (2) did have or reasonably should have had knowledge that prostitution was practiced at the gathering; (3) untruthfully denied his full knowledge and participation to local police officers performing their official investigative duties at the site after a lawful raid upon the premises; and (4) untruthfully reported the incident to his superiors? Or, second, was such conduct as plaintiff (hereafter appellant) urges, a private act of consensual sexual preference about which the employer may not inquire; if so, and if the employer may not so inquire, may untruthfulness form the basis for discipline? Third, if discipline was proper, was dismissal too severe a punishment as a matter of law?
 

 Under the facts, which we detail below, we conclude that the trier of fact reasonably determined that the patrolman’s conduct indicates
 
 *100
 
 unfitness for employment as a Highway Patrol officer. A nexus exists between his duties as an officer and acts with which he was charged. The discipline, though severe, was within permissible range.
 

 We discuss, in addition, the issue of back pay. In conformity with current decisional law, we believe that an employee must be paid until an opportunity to respond directly to the authority imposing the discipline is provided. There is no need to await appeal to the State Personnel Board.
 

 A convoluted set of circumstances led to the present difficulty of appellant, a California Highway Patrol officer. In October 1976, vice officers with the San Jose City Police Department received information of possible prostitution activity in their city. An advertisement in the Berkeley Barb had alerted them. An investigating officer called the telephone number listed in the advertisement and spoke with a person identified as “Kathy” who informed him of a party that would cost $50. He was referred to “Debbie” at another telephone number. Debbie (later identified as Paul Stewart), who admitted being transsexual, informed the officer that a commercial party was to be held in a private residence which enjoyed a cocktail atmosphere and a converted area for any intimate type relationship. Two types of reservations were accepted, one costing $50 for all the patron could drink and eat, the stage show, and continuous adult movies; and one costing $100 which included unlimited satisfaction with any and all of the “hostesses” present.
 

 A personal interview was required before being accepted as a guest, since the officer was new to the group. The officer had an interview with “Kathy” (later identified as Aaron Mathews), also a transsexual. The officer asked if he could bring a friend, and, accordingly, an interview was conducted with the officer’s partner. Both were accepted. They each requested $100 reservations and paid $25 for a deposit. On the night of the party the officers arrived and paid the remaining $75. There were about 25 people at the party, one of whom was appellant.
 

 At the party one of the officers was solicited by Kathy who took him downstairs and opened a bedroom door. The officer saw appellant in that bedroom. Kathy and the officer went to another room. Once inside the room, the officer identified himself as an officer and began an arrest procedure. Other vice officers entered the building. One officer opened the door to a bedroom and observed appellant standing at the foot of the bed pulling up his trousers. A person known as “Harlow” (later identified
 
 *101
 
 as William Hoch) was on the bed starting to put on a pair of panty hose. A police photographer entered and photographed appellant and Harlow.
 

 Appellant informed the arresting officers of his status as a Highway Patrol officer. Appellant told the officers that he had paid $50 to attend the party and that he had gone there with the intent, in part, of being sexually gratified. He denied knowledge that Harlow, the other person in the room, was a man. He had obtained the information concerning the party from Debbie as a follow up to the advertisement in the Berkeley Barb. Never before, he told the arresting officers, had he attended such a party. Appellant was not arrested.
 

 After the incident, appellant telephoned his superior officer in the Highway Patrol indicating that he wished to discuss a personal matter. At appellant’s request they met at a restaurant. There, appellant related to his superior that he had been caught in a raid on a house of prostitution after he had answered an advertisement in the Berkeley Barb. He spoke of his encounter with Harlow, but said that he did not know Harlow was a man when he went to the room.
 

 An investigation was conducted by the Highway Patrol. Appellant gave the investigators more details. He had found out about the party from the Berkeley Barb and from his friend, Aaron Mathews (Kathy). He also admitted that he knew Paul Stewart (Debbie) prior to the party, and that he was aware that Stewart was a transvestite. Harlow had just begun to orally copulate him, appellant reported, when the raid began. He had met Harlow before the party and was aware that Harlow too, was a transvestite.
 

 Appellant acknowledged during the investigation that he had previously told either Stewart or Mathews that he was a highway patrolman. Further, he had received a massage from one of them. He had used the name “Dave” on a similar prior occasion.
 

 After the investigation, on December 10, 1976, appellant was served with a “Notice of Leave of Absence Pending Investigation,” placing him on leave of absence effective December 11, 1976, through December 25, 1976, pursuant to Government Code section 19574.5. On December 22, 1976, three days before the leave ended, appellant was served with a “Notice of Punitive Action,” dismissing him retroactively to December 11, 1976. Appellant filed an answer to the notice. Thereafter, an amendment to the “Notice of Punitive Action” was filed.
 

 
 *102
 
 The notice of punitive action and the amendment listed the following reasons for appellant’s dismissal: (1) During a raid for prostitution he had been found in a bedroom with a transvestite in a state of undress; he had paid $50 to attend the party with full knowledge that the money entitled him to sexual favors from persons at the party (in violation of Pen. Code, § 647, subd. (b)); (2) He had lied to the investigating officers after the raid when he told them that he had not previously attended any other parties given by Stewart or Mathews; (3) He had not been truthful with his superior officer in that he stated that he did not know Harlow was a transsexual, failed to mention his acquaintance with Stewart prior to the party, denied a sexual act with Harlow, and stated that he learned of the party in the Berkeley Barb (he later admitted Stewart had told him about the party).
 

 Appellant testified at the hearing held pursuant to the notice of punitive action. We summarize his testimony. He had heard of the party from both Paul Stewart and the Berkeley Barb. On at least two prior occasions he had been orally copulated by Paul Stewart. The $50 he had paid to attend the party entitled him to unlimited amount of alcohol, food, movies, and some type of entertainment which had not been defined. No promises of sexual acts were made to him, nor was he aware that the payment of a higher amount would entitle him to acts of sexual gratification. He had no knowledge that prostitution was involved. Although he had been a visitor at Stewart’s house, he had never been to any parties before. He knew Harlow was a man and had had a sexual encounter with him prior to the party. No payment at the party was made to Harlow for sex. The reason he did not disclose his knowledge of Harlow, Stewart and Mathews to the San Jose police was that he was embarrassed, scared and ashamed. For those same reasons, he told his superior officer that he did not know that Harlow was a man. During the period of time surrounding the party he had been having marital problems with his wife. She had gotten fat and lazy, and had deprived him of sex.
 

 A psychiatrist who had examined appellant testified on his behalf. Appellant’s marital problems, according to the witness, were the cause of his behavior. His involvement with Stewart and Mathews was a sort of informal therapy. The witness did not believe that appellant has homosexual proclivities.
 

 The hearing officer prepared a proposed decision which concluded:
 

 “Appellant’s attending the transvestite party on October 29, 1976, and his
 
 *103
 
 conduct with ‘Harlow’ at the party clearly constitutes failure of good behavior of such a nature as to cause discredit to the Department of California Highway Patrol and to appellant’s employment as a State Traffic Officer within the meaning of Government Code Section 19572(t). [¶] Appellant’s false statements . . . constitute dishonesty within the meaning of Government Code Section 19572(f).” The hearing officer found that appellant’s conduct fully warranted his dismissal. The board adopted the proposed decision as its own.
 

 On petition for a writ of mandate the trial court reviewed the decision of the board. It applied the substantial evidence test and upheld the dismissal. However, the trial court held that due process requirements had not been met in that appellant was denied a hearing prior to dismissal under circumstances that did not require special protection of the state’s interest. Consequently, the court ordered that appellant be paid back wages and benefits from the date of his dismissal (Dec. 11, 1976) to the date of his hearing (Apr. 13, 1977).
 

 I
 

 His attendance at the transsexual party and participation in an act of oral copulation with a transsexual, appellant argues, do not support his dismissal from the Highway Patrol. He contends that the conduct, itself, was not illegal, and that there was no showing of a sufficient nexus between these isolated acts and his regular employment.
 

 With respect to his first argument, appellant lays emphasis on the fact that he was not charged with or convicted of any crime in connection with the incident. He concludes that his participation was not criminal in nature. The board replies that the facts underlying his participation in the party could render him guilty of a violation of Penal Code section 647, subdivision (a), and that a conviction is not necessary in order to support the discipline.
 
 [1]
 

 The disciplinary action taken against appellant was not based upon conviction for a crime, nor did the board base its decision on a finding that appellant was guilty of a crime.
 
 [2]
 
 Appellant was charged with the
 
 *104
 
 failure of good behavior of such a nature as to cause discredit to his agency or employment. (Gov. Code, § 19572, subd. (t).) In determining whether appellant is guilty of such failure of good conduct as to warrant discipline it is not necessary that the employee be convicted of a crime nor that it appear that the actions of the employee are illegal.
 
 (Szmaciarz
 
 v.
 
 State Personnel Bd.
 
 (1978) 79 Cal.App.3d 904, 921 [145 Cal.Rptr. 396].) Since the board did not purport to rely upon criminal activity as the basis for discipline we find it unnecessary to determine whether appellant’s actions could constitute a violation of Penal Code section 647, subdivision (a).
 

 Does the evidence, nonetheless, support the conclusion that appellant’s conduct comes within the proscription of Government Code section 19572, subdivision (t)? That statutory provision reads: “Other failure of good behavior either during or outside of duty hours which is of such a nature that it causes discredit to his agency or his employment.” Discipline pursuant to the quoted statute must be based on more than failure of good behavior; it must be of such a nature as to reflect upon his job. That is, it must bear some rational relationship to his employment and must be of such character that it can easily result in the impairment or disruption of the public service.
 
 (Vielehr
 
 v.
 
 State Personnel Bd.
 
 (1973) 32 Cal.App.3d 187, 192 [107 Cal.Rptr. 852]. See also
 
 Morrison
 
 v.
 
 State Board of Education
 
 (1969) 1 Cal.3d 214, 220-221 [82 Cal.Rptr. 175, 461 P.2d 375];
 
 Shepherd
 
 v.
 
 State Personnel Board
 
 (1957) 48 Cal.2d 41, 51 [307 P.2d 4].)
 

 In
 
 Morrison
 
 v.
 
 State Board of Education, supra,
 
 1 Cal.3d at pages 224-225, the Supreme Court observed: “Terms such as ‘immoral or unprofessional conduct’ or ‘moral turpitude’ stretch over so wide a range that they embrace an unlimited area of conduct. In using them the Legislature surely did not mean to endow the employing agency with the power to dismiss any employee whose personal, private conduct incurred its disapproval.” The notion that a highway patrolman may be dismissed on the sole basis that his lifestyle (sexual preference) is offensive to his fellow officers has no basis in law. The critical question is not whether appellant’s conduct violated the mores of the public or of the Highway Patrol, but whether such conduct indicates an unfitness for employment with the Highway Patrol, In that regard the board found appellant’s conduct was within the proscription of Government Code section 19572, subdivision (t), and that such conduct is indicative of an unfitness to engage in law enforcement.
 

 
 *105
 
 Appellant argues that he was dismissed for his private, personal sexual actions, and that those actions do not indicate an unfitness for employment as a Highway Patrol officer. The determination that an employee’s conduct indicates unfitness for his position is a question of ultimate fact.
 
 (Board of Education
 
 v.
 
 Jack M.
 
 (1977) 19 Cal.3d 691, 698, fn. 3 [139 Cal.Rptr. 700, 566 P.2d 602].) The State Personnel Board is a statewide administrative agency deriving its adjudicative powers from the Constitution; accordingly, its factual determinations must be upheld by a reviewing court if they are supported by substantial evidence, and all legitimate and reasonable inferences must be drawn in support of such findings.
 
 (Vielehr
 
 v.
 
 State Personnel Bd., supra,
 
 32 Cal.App.3d at p. 190;
 
 Gee
 
 v.
 
 California State Personnel Bd.
 
 (1970) 5 Cal.App.3d 713, 717 [85 Cal.Rptr. 762].)
 

 We agree with appellant that dismissal cannot be based on lawful sexual acts conducted in the privacy of a home which do not indicate unfitness for a particular employment. However, we disagree with his characterization of the facts. Much more was involved.
 

 The evidence was uncontroverted that the party was held for the purposes of prostitution. The investigating officers were told that they could reserve unlimited satisfaction for themselves with any and all “hostesses” by paying a $100 fee. During the party acts of prostitution were conducted, and one of the undercover officers was solicited. Appellant was a friend of two of the transsexuals who organized and held the party, and he was acquainted with another. He had been involved with the transsexuals during the two years prior to the party. Appellant stated that he read about the party in the Berkeley Barb in which appellant’s friends “Kathy” and “Debbie” placed advertisements. One advertisement, accompanied by a photograph, read “Sexy Queen (TVW/M) with breasts (36C-26-36) will dress to please men. 11a.m. to 11p.m. Mon. through Sat. Love older men. Reasonable rates. Very personable, loveable and discreet. Kathy (408) 247-0803 (San Jose).” The other read: “Halloween Party (Oct. 29) Drag Queens, TV’s, women, men (gay or bi). Food, drink, movies, dancing, make-up assistance, etc. Debbie (408) 247-0803 (San Jose).” Appellant attended the party with some expectation of receiving sexual gratification; and when he met Harlow he asked him “When is it my turn?” In sum, the activity was commercial in nature (sex for sale) and not very private.
 

 That appellant knew the nature of their enterprise can be gathered by his own actions. He used an alias “Dave” while in attendance at the
 
 *106
 
 party. When the raid took place appellant gave false information to the investigating officers. Later, he repeated some of the falsehoods to his superiors. In addition, he expressed concern to the investigating officers that his conduct might result in disciplinary action.
 

 Appellant’s explanation of his troubles, as summarized at oral argument, is this; The California Highway Patrol is a “macho”
 
 [3]
 
 outfit whose members were angered by the nature of appellant’s private sexual acts. They consider this incident an embarrassment. Had appellant been caught in a house of ill fame in the act of having sexual intercourse with a female prostitute, the matter would have been winked at officially and appellant would have been rewarded with good-natured slapping of his back by his fellow officers. And, had he lied initially, his later explanation that he had not wanted to hurt his wife’s feelings would have been readily and sympathetically accepted. No discipline would have been imposed since the act of having sexual intercourse would not be considered “shameful” and since the “little white lie” would be considered understandable and nobly motivated. Such, in part, may or may not be the reality. What is clear is that such an explanation is based on speculation. However, we are bound by the record and we are bound to draw every legitimate and reasonable inference in favor of, not against, the findings of the board and trial court. We conclude that the evidence supports the inference that appellant did not innocently attend what he believed to be a private party. Rather, he gave his tacit approval to the illegal behavior of the “hostesses.” The detrimental effect of appellant’s conduct to law enforcement activities is indicated by the statement of “Harlow” upon his arrest, when he referred to the fact that he had been in a room with a cop who had his pants down, and “wanted to know why he [Harlow] had been arrested.” A law enforcement agency cannot permit its officers to engage in off-duty conduct which entangles the officer with lawbreakers and gives tacit approval to their activities. Such off-duty activity casts discredit upon the officer, the agency, and law enforcement in general. The evidence thus supports the conclusion that appellant’s conduct is a cause for discipline within the meaning of Government Code section 19572, subdivision (t). We find substantial evidence to support the dismissal on that basis.
 

 
 *107
 
 II
 

 Appellant next focuses on the issue of dishonesty as a basis for Government Code section 19572, subdivision (f) discipline. There is no contention that the initial disclosures made by appellant to the investigating officers after the raid on the party or to his superiors in informing them of the incident were not untruthful. Rather, the contention is more fundamental; it is that there are certain matters into which an employer has no lawful right to inquire or investigate, and thereafter use that information to discipline.
 

 Appellant mischaracterizes the issue. This was not a case in which the employing agency initiated an investigation into an employee’s private, personal sex life. Such an inquiry, we agree, would be a gross intrusion into an employee’s constitutionally protected right of privacy. However, it was appellant who actively involved himself in conduct which predictably would or could bring him in contact with law enforcement officials. His acts, we have noted, were not private.
 

 The dishonesty, we have seen, was clear. In an effort to avoid the result of his conduct false answers were given to investigating officers. The seriousness was compounded by his initiation of conversations with his superior officers in which he made false statements regarding his conduct. The false statements were not protected, as appellant suggests, due to the unlawfulness of the inquiry. The evidence supports the inference that appellant gave false statements to conceal his conduct. Such evidence supports the finding of dishonesty. (See
 
 Catricala
 
 v.
 
 State Personnel Bd.
 
 (1974) 43 Cal.App.3d 642, 648-650 [118 Cal.Rptr. 89].)
 

 III
 

 The punishment, the appellant tells us, does not fit the “crime.” Dismissal was an excessive punishment for his conduct. He makes three points: (1) there was no demonstrated harm to the public service, (2) his conduct was not likely to recur, and (3) there were substantial mitigating factors.
 

 A determination of penalty by an administrative agency will not be disturbed unless there has been an abuse of the agency’s discretion.
 
 (Skelly
 
 v.
 
 State Personnel Bd.
 
 (1975) 15 Cal.3d 194, 217 [124 Cal.Rptr. 14, 539 P.2d 774].) While an administrative agency has broad discretion in the imposition of penalty or discipline, that discretion is not unlimited. In
 
 *108
 
 considering whether an abuse of discretion occurred in the discipline of a public employee, the overriding consideration is the extent to which the employee’s conduct resulted in, or if repeated is likely to result in, harm to the public service. Other factors include the circumstances surrounding the misconduct and the likelihood of its recurrence.
 

 The harm to the public service is evident. Appellant’s actions would tend to reflect adversely concerning him and his agency, hinder the legitimate law enforcement activities of another police agency, and hinder his own agency’s investigation of the incident. Appellant’s conduct could create barriers to the cooperation necessary among different law enforcement agencies, and could hamper his ability to work effectively within his own agency. In addition, the board could have properly concluded that due to the extended period of involvement with the transsexuals his conduct might be likely to recur. In light of such factors we are unable to say that the board abused its discretion in determining that dismissal was the proper discipline to be imposed. We are mindful that appellant presented mitigating factors; however, these factors were fully considered by the board and found insufficient to justify a lesser penalty.
 

 IV
 

 Appellant was placed upon leave of absence effective December 11, 1976, by notice which he received on December 10, 1976. The leave of absence purported to be under the provisions of Government Code section 19574.5.
 
 [4]
 
 On December 17, 1976, appellant received a “Preliminary Notice of Punitive Action.” That notice informed appellant that dismissal would be recommended based upon the charges against him,
 
 *109
 
 and that he had until December 22, 1976, to reply, orally or in writing. The notice further informed appellant that he was not entitled to a formal hearing at that time, but that he was entitled to have a representative assist him in preparing his response. He was also allowed time to review the punitive action request file. Nonetheless, appellant did not respond to the notice and on December 22, 1976, he was notified of his dismissal effective December 11, 1976.
 

 The board adopted the decision of the hearing officer wherein appellant’s contention was rejected that the procedure used to dismiss him did not comply with due process requirements. The trial court disagreed, however. It found that Government Code section 19574.5 does not narrowly draw into focus those extraordinary circumstances in which immediate action may be required and does not provide constitutionally sufficient prior procedural protections, thereby violating the Fifth and Fourteenth Amendments to the United States Constitution, and article I, sections 7 and 15 of the California Constitution. The court further found that there was nothing to require prompt removal. The court ordered that appellant’s dismissal not be effective until the hearing before the board. The board appeals from that portion of the judgment.
 

 In
 
 Skelly
 
 v.
 
 State Personnel Bd., supra,
 
 15 Cal.3d at page 215, the California Supreme Court reasoned: “It is clear that due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action. However . . . due process does mandate that the employee be accorded certain procedural rights before the discipline becomes effective. As a minimum, these preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing the discipline.” The court found California’s disciplinary procedure under Government Code section 19574 inadequate. In response to the board’s contention that extraordinary circumstances might exist necessitating prompt removal, the court noted that Government Code section 19574 is not limited to such extraordinary circumstances. (15 Cal.3d at p. 216.) In considering section 19574.5, the section in question, the court did not express itself on whether that section was constitutionally adequate. Nonetheless, the opinion indicated that extraordinary circumstances may exist where immediate action is required justifying removal without a prior opportunity to respond.
 
 (Ibid.)
 

 
 *110
 
 Government Code section 19574.5 lists five types of accusations which permit an employee to be placed on leave of absence pending investigation; (1) misappropriation of public funds or property; (2) drug addiction; (3) mistreatment of persons in a state institution; (4) immorality; or (5) acts which would constitute a felony or a misdemeanor involving moral turpitude. If one of these circumstances exist then the employee may be removed by being placed upon leave of absence for a period not to exceed 15 days, and ultimate dismissal may be made retroactive to the first date of the forced leave of absence.
 

 We are assisted by decisional law in giving meaning to the statutory disciplinary procedure. In
 
 Morrison
 
 v.
 
 State Board of Education, supra,
 
 1 Cal.3d at pages 220-230, the Supreme Court considered a section of the Education Code which provided for the revocation of a teaching certificate for “immoral conduct,” “unprofessional conduct,” and “acts involving moral turpitude.” The court held that those terms must be interpreted to refer to acts which apply to the employee’s performance on the job. Dismissal based on one of the statutory reasons must indicate an unfitness for that position. (1 Cal.3d at pp. 224-226.) We find the reasoning in
 
 Morrison
 
 persuasive in setting limits to a disciplinary action pursuant to Government Code section 19574.5. Without such an interpretation, any employee whose conduct might arguably come within one of the section 19574.5 categories would be subject to dismissal without prior procedural safeguards, whether the conduct actually was extraordinary requiring immediate dismissal. We hold that before an employee may be dismissed pursuant to Government Code section 19574.5, the conduct must not only relate to his job performance but must also constitute such a job-related extraordinary circumstance that immediate removal is required.
 

 Judged by this standard we must agree with the trial court that appellant’s dismissal prior to the time he was accorded notice and the opportunity to respond was improper. Although appellant’s conduct indicated an unfitness for employment such that dismissal was proper, nothing in the record suggests the existence of such job-related extraordinary circumstances that immediate dismissal was necessary without prior procedural safeguards. We need not meet the constitutional attack on Government Code section 19574.5. We believe the statute must be read reasonably, and such a reading includes the standard we have articulated forjudging extraordinary circumstances. Those circumstances, of course, must be job-related and must show the necessity for immediate removal. We conclude that appellant’s activity, although a proper base
 
 *111
 
 for discipline under Government Code section 19574, was not so extraordinary as to bring it within the more stringent standard of Government Code section 19574.5. Accordingly, whether the statute is constitutional when applied to actual job-related extraordinary circumstances which indicate a necessity for immediate removal is not before us.
 

 V
 

 The board contends that even if the appellant was entitled to an award of back wages and benefits, the trial court miscalculated the period for which he was so entitled. We agree.
 
 [5]
 

 We start with
 
 Skelly.
 
 “[The] decision in
 
 Skelly
 
 did not impose a requirement that full evidentiary hearings be held prior to imposition of discipline. Rather, [it] held that due process required preremoval safeguards of ‘notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline.’ (15 Cal.3d atp. 215.)”
 
 (Barber
 
 v.
 
 State Personnel Bd.
 
 (1976) 18 Cal.3d 395, 401 [134 Cal.Rptr. 206, 556 P.2d 306].) The provisions of the Government Code relating to discipline are not invalid; rather, their constitutional weakness derives from what they omit and not from their express terms. Those statutes may still be applied provided the minimum due process requirements are satisfied. Discipline imposed which does not comply with due process requirements is invalid, and therefore ineffective until such time as the due process requirements are met. In turn, those requirements are met when the employee is permitted to respond to the authority initially imposing the discipline prior to the time the disciplinary decision is rendered.
 

 Appellant was placed bn leave of absence effective December 11, 1976, pending investigation. On December 17, six days later, he was notified that disciplinary action was proposed, and he was given until December 22, 1976, to respond. He was permitted access to the file containing the results of the investigation, and permitted to have a representative assist
 
 *112
 
 him in his response. Appellant was notified that any response would become a part of the file and would be considered by each level of command in arriving at a final decision on the discipline to be imposed. The final decision to dismiss appellant was not made until the time in which he was permitted to respond had passed even though he had failed to respond. Under these circumstances the minimum due process requirements were met on December 22, 1976; appellant had been permitted the opportunity to respond to the proposed discipline prior to the final decision. (See
 
 Bussey
 
 v.
 
 Los Angeles County Civil Service Com.
 
 (1977) 72 Cal.App.3d 912, pp. 922-923 [140 Cal.Rptr. 394].)
 

 The. vice in appellant’s dismissal on December 22, 1976, was not in the imposition of discipline at that time; it was in the attempt to make that dismissal retroactive to the effective date of appellant’s leave of absence. We hold that appellant is entitled to back wages and benefits from December 11, 1976, through December 22, 1976. His dismissal was effective December 23, 1976.
 

 The judgment of the trial court is affirmed insofar as it denies appellant reinstatement; it is reversed insofar as it orders the State Personnel Board to pay appellant salary and benefits to April 13, 1977. The trial court is directed to enter a new judgment ordering the State Personnel Board to set the effective date of appellant’s dismissal as December 23, 1976, thereby entitling appellant to salary and benefits up to and including December 22, 1976.
 

 Regan, J., concurred.
 

 Puglia, P. J., concurred in the judgment.
 

 The petition of the plaintiff and appellant for a hearing by the Supreme Court was denied September 6, 1979. Bird, C. J., did not participate therein.
 

 [1]
 

 Penal Code section 647, subdivision (a) provides that every person “Who solicits anyone to engage in or who engages in lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view” is guilty of disorderly conduct, a misdemeanor.
 

 [2]
 

 Govemment Code section 19572, subdivision (k) provides for discipline of a public employee for the conviction of a felony or of a misdemeanor involving moral turpitude.
 

 [3]
 

 The author of this opinion, a person with an affinity for the Spanish language, laments the misuse of the term “macho” by the English-speaking. The term means “masculine,” or alternatively “strong and robust”; the essence of a macho is one who combines strength with gentleness and dignity. It is a distortion to use the term as a synonym for “male-chauvinist-pig” or for exaggerated male self-importance.
 

 [4]
 

 Government Code section 19574.5 provides: “Pending investigation by the appointing power of accusations against an employee involving misappropriation of public funds or property, drug addiction, mistreatment of persons in a state institution, immorality, or acts which would constitute a felony or a misdemeanor involving moral turpitude, the appointing power may order the employee on leave of absence for not to exceed 15 days. The leave may be terminated by the appointing power by giving 48 hours’ notice in writing to the employee. “If punitive action is not taken on or before the date such a leave is terminated, the leave shall be with pay. “If punitive action is taken on or before the date such leave is terminated, the punitive action may be taken retroactive to any date on or after the date the employee went on leave. Notwithstanding the provisions of Section 19574, the punitive action, under such circumstances, shall be valid if written notice is served upon the employee and filed with the board not later than 15 calendar days after the employee is notified of the punitive action.”
 

 [5]
 

 Appellant argues that the board should not be permitted to make this contention for the first time on appeal. In the trial court appellant argued that he was entitled to salary and benefits due to a violation of due process; the board resisted that argument. Appellant is not required to defend for the first time on appeal against a new theory that contemplates a factual situation which was not put in issue at trial.
 
 (Ward
 
 v.
 
 Taggart
 
 (1959) 51 Cal.2d 736, 742 [336 P.2d 534].) When the trial court decided adversely to the board the issue of the proper period of salary and benefits was a pure question of law on facts appearing on the record. The board may therefore raise its contention on appeal.
 
 (Ibid.)
 
 We therefore consider the board’s contention.