[Civ. No. 49310. Second Dist., Div. Five. Aug. 24, 1977.]

ALICE BUSSEY, Plaintiff and Appellant, v.
LOS ANGELES COUNTY CIVIL SERVICE COMMISSION et al.,
Defendants and Appellants.

Counsel

Alice Bussey, in pro. per., for Plaintiff and Appellant.

John H. Larson, County Counsel, and John M. Baskett, Deputy County Counsel, for Defendants and Appellants.

Opinion

KAUS, P. J.—Petitioner Alice Bussey was employed by respondent Los Angeles County (County) as a senior medical social worker. On

November 20, 1973, the County suspended plaintiff for a period of 30 days and discharged her effective December 20, 1973. A hearing, which began in January 1974 and ended in September 1974, was held before the Los Angeles County Civil Service Commission (Commission). In December 1974, the Commission rendered its decision upholding the suspension and discharge. Petitioner then filed a petition for writ of mandate in the superior court. That court denied the petition with respect to petitioner's demand for reinstatement, but ordered that a writ be issued ordering defendants to substitute the date of December 11, 1974—the date the Commission's decision was issued—as the effective date of petitioner's discharge. She appeals from the trial court's denial of her petition for a writ ordering reinstatement. The County appeals from the trial court's orders that petitioner's discharge date be changed and that she be compensated accordingly.

## FACTS

The record in this case consists of a 12-volume reporter's transcript of petitioner's hearing before the Commission, 529 pages of exhibits presented at that hearing, and a clerk's and reporter's transcript of the superior court proceedings. Despite the size of the record, petitioner has totally failed to include any comprehensible statement of facts. We therefore will assume that the findings of fact and conclusions of law which we summarize below are supported by substantial evidence and state only so much of the underlying facts as will make this opinion comprehensible. (E.g., *Dietrich* v. *Dietrich* (1969) 226 Cal.App.2d 650, 652 [38 Cal.Rptr. 261]; *Morrell* v. *Clark* (1951) 106 Cal.App.2d 198, 201 [234 P.2d 774].)

Petitioner, who received a permanent assignment to a position of senior medical social worker from respondent County in 1966, was assigned in 1971 to the Southeast Public Health District. Sometime thereafter, Cynthia Baker, another senior medical social worker, was designated district director and supervisor within the district over all staff, including petitioner. Petitioner insisted that an employee in the same job classification could not be assigned to supervise her and, therefore, refused to work cooperatively with Cynthia Baker and refused to accept Ms. Baker's directives. Petitioner was informed in writing that Cynthia Baker was her supervisor for all purposes in May 1971, September 1971, March 1972, May 1972, July 1972, August 1972, January 1973, June 1973 and September 1973. She refused to accept this directive from persons concededly superior to her in the civil service hierarchy.

Petitioner persisted in engaging in practices that were contrary to directives from Ms. Baker, which directives were approved by Ms. Baker's and petitioner's supervisors. These practices included, but were not limited to, chastising pregnant, young, unmarried patients and declining to confer with Ms. Baker concerning these practices or any other matters.

Finally, in September 1973, petitioner received a "report of performance evaluation," signed by Ms. Baker and cosigned by two supervisory people in the department, which rated her job performance as "improvement needed." The report recited in three and one-half, single-spaced typed pages, petitioner's failings, chiefly her rude, abrasive and hostile treatment of patients, and her refusal to accept directives from Ms. Baker.

Consistent with civil service commission rules,[1] petitioner received a "plan for improvement," which detailed the manner in which she would be expected to perform. She was informed in writing that if during the six-month period allowed for the plan for improvement, she failed "to demonstrate continuous progress in achieving goals," she would be discharged.

Petitioner refused to discuss this performance evaluation with Ms. Baker. She filed a grievance concerning the performance evaluation. The grievance was denied and petitioner requested review at the second level. Petitioner's request for a second-level review was denied on grounds that she failed to comply with the proper procedure in that she refused to discuss her performance evaluation with her supervisor, Cynthia Baker.[2] She continued to refuse to discuss her work with Ms. Baker and was the subject of several complaints by patients who claimed to have been rudely treated by petitioner. On November 20, 1973, petitioner failed to appear at a meeting to discuss her performance with Ms. Baker. That day she was given a letter suspending and firing her, signed by Ralph R. Sachs, Deputy Director of the Department of Health Services. That letter stated that effective November 20, 1973, she was suspended without pay for a period of 30 days and that effective December 20, 1973, she was

---

[1] Los Angeles County Civil Service Commission rules 21.04, 21.06, 21.07.

[2] The department grievance procedure, authorized by Los Angeles County Civil Service rule 21.14 and negotiated by the County and petitioner's union provided as follows:
  (1) Formal written grievance to be filed with employee's supervisor.
  (2) Appeal to "middle management."
  (3) Appeal to department head.

permanently discharged from her position. The letter stated that the reasons for the action were that she had caused numerous and significant problems which resulted in friction and poor relationships with the patients she was supposed to serve and that she had been insubordinate to her supervisor. The letter recited details of complaints made against her by patients in October and November, 1973.

Petitioner appealed her suspension and discharge to the Civil Service Commission. Hearings were held on the following dates: January 28, January 29, January 31, March 14, March 15, May 13, May 20, June 24, August 8, August 9, August 30, and September 13, 1974. Thereafter, the referee made findings of fact and conclusions of law which were adopted by the Commission. The findings recited the September 1973 report of performance evaluation and plan of improvement, found that petitioner refused to discuss this report and plan with her supervisor, found that complaints were made against petitioner which she refused to discuss with Cynthia Baker as her supervisor, found that petitioner had been advised that Ms. Baker was her supervisor, and found that petitioner's conduct constituted insubordination. The opinion concluded as follows: Ms. Baker's appointment as district director was not an abuse of discretion by the Department of Health Services, petitioner's conduct set forth in the findings constituted insubordination, her conduct was inconsistent with continued employment by the County and good cause existed to sustain the discipline imposed upon her.

DISCUSSION

*Petitioner's Appeal*

(1) Petitioner contends that the judgment of the trial court "was not the ruling intended by superior court, division 88, November 12, 1975." Petitioner here is referring to a stipulation drafted by the County and petitioner's attorney, under which the court would reinstate petitioner and petitioner would waive any claim to back pay. Petitioner, however, refused to sign this agreement.

Petitioner is clearly confused. Her opportunity to be reinstated evaporated when she declined to sign the stipulation. ■ Besides, to the extent that petitioner is contending that the County's willingness to reinstate her in November 1975 reflects an admission of wrong doing, such evidence would be inadmissible. (Evid. Code, § 1152.)

(2) ■ Petitioner contends that she was denied a "fair hearing." Her complaint appears to be that the hearing officer who heard the proceedings and prepared the findings of fact and conclusions of law in 1974, resigned in January 1976, and was therefore unavailable for the court hearing. Petitioner is again confused. The court decided this case based on the record of the administrative hearing.

(3) Petitioner contends that her discharge was "accomplished by illegal, fraudulent, deceptive and unethical practices of a great many county employees and her legal representatives," and that the Civil Service Commission was permitted "to violate its own rules and the county ordinance of Los Angeles."

Again petitioner's complaint is unclear. This court, of course, does not reweigh the evidence. (E.g., *Rigsby* v. *Civil Service Com.* (1974) 39 Cal.App.3d 696, 701 [115 Cal.Rptr. 490].) Some of petitioner's complaints concern factual contentions resolved against her at the administrative hearing and in the trial court: that Cynthia Baker did not prepare the September 1973 improvement needed performance evaluation; that an employee who participated in the preparation of the report had no right to do so; that the comments contained in the "improvement needed" rating were either highly exaggerated or untrue; that Dr. Ralph R. Sachs did not sign the letter of suspension and discharge; that the charges of insubordination and poor relationships were untrue.

■ Petitioner contends that she could not be fired for insubordination because Cynthia Baker was not lawfully her supervisor. She relies on a Los Angeles County salary ordinance which provides that "an employee required to supervise other employees as part of his regular duties shall receive compensation at a rate of $1.00 per month more than the base rate of his highest paid subordinate, . . ." She then relies on the rule that insubordination "can be rightfully predicated only upon a refusal to obey some order which a superior officer is entitled to give and entitled to have obeyed." (*Parrish* v. *Civil Service Commission* (1967) 66 Cal.2d 260, 264 [57 Cal.Rptr. 623, 425 P.2d 223].) Leaving aside the question whether this rule applies only where the order would involve illegal conduct (see *Morrison* v. *State Board of Education* (1969) 1 Cal.3d 214, 233, fn. 37 [82 Cal.Rptr. 175, 461 P.2d 375]), the salary ordinance relied on by petitioner affects the rights of the supervisory employee and not the duties of the supervised employee. The Los Angeles Administrative Code (Ord. No. 4099), section 80, authorizes a department or office head "to assign the work of his office or department to the officers and

employees therein," and to "reassign any work at any time he deems it expedient for the securing of efficiency, and the head of each office shall in writing notify the Board of those persons in his office whom he desires to or has appointed as deputies."

Cynthia Baker was assigned by the Director of the Bureau of Public Health Social Work to supervise all persons working in the position of senior medical social worker at the Southeast Health District. After being given adequate notice that Cynthia Baker was to act as her supervisor, petitioner had no right to question further whether her orders came directly or indirectly from an acknowledged superior in the civil service hierarchy, provided that the orders themselves did not require illegal conduct—a matter that petitioner does not suggest.

Petitioner's other contentions are barely comprehensible.[3]

## CROSS-APPEAL

The trial court relying upon *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774], ordered the County to pay petitioner her salary from the date she was suspended until the date of the Civil Service Commission proceedings were final.

In its cross-appeal, the County contends, first, that *Skelly* does not apply to this case because petitioner was suspended and discharged before *Skelly* was filed—a contention that has no merit (see *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395, 401-402 [134 Cal.Rptr. 206, 556 P.2d 306])[4]—and, second, that the requirements of *Skelly* were met. This contention has merit.

---

[3]Complaints brought against petitioner were "provoked and monitored by the administrative staff at downtown headquarters," one of whom, Steve Fishman "never was anyone's supervisor within the structure of the Department of Health Services, Department of Community Health." "How many staff persons within the administrative, clerical, medical, social work and personnel departments are legally required to become involved in the supervision, rating, monitoring suspension and discharge of one classified civil service employee?" "There is no record in evidence of the hearing session held January 3, 1974." "Page 66 of Exhibit 2 falls far short of describing what actually took place Monday, April 15, 1974. Rosa Trebach was the Reporter. Where is the Reporter's Transcript?" (Apparently off-the-record conferences were held.)

[4]The County's theory is that until 1974, the *Skelly* rule was not foreseeable. Our Supreme Court, however, necessarily rejected that consideration in *Barber,* in which the employee was fired in May 1972. (18 Cal.3d at p. 399.)

In *Barber,* the Supreme Court held that *Skelly* applies to all pending cases where the dismissal is not yet final (*id.,* at p. 402), and defined finality to mean when the board files

In *Skelly*, the court held that the State Civil Service provisions which provided for a hearing only after an employee was dismissed or otherwise disciplined (15 Cal.3d at pp. 202-203) did not fulfill minimum constitutional demands. (*Id.*, at p. 215.) In so holding, the court made clear that "due process does not require the state to provide the employee with a full trial-type evidentiary hearing prior to the initial taking of punitive action." Rather, the court required that at a minimum, the "preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215; see also *Barber* v. *State Personnel Bd.*, *supra*, 18 Cal.3d 395, 401.)

We think these requirements were met in this case.[5]

The September 1973 Report of Performance Evaluation, described above, was signed by Cynthia Baker, reviewed by Norma Ocon, and approved by Dr. Ralph R. Sachs. Petitioner's performance was rated as "improvement needed." The reasons given were that she failed to

its decision. (*Id.*, at p. 403.) Although the court in *Barber* agreed that *Skelly* was not foreseeable until 1974, when the United States Supreme Court decided *Arnett* v. *Kennedy*, 416 U.S. 134 [40 L.Ed.2d 15, 94 S.Ct. 1633] (*id.*, at p. 401), the court did not limit retroactivity to those cases in which the discharge occurred after 1974.

Under these circumstances, we have no latitude whatsoever for distinguishing *Barber*.

[5]The procedures followed in this case conformed to the Los Angeles County Civil Service Commission Rules. Rule 21.04 provides for rating standards and states that when an employee receives an "Improvement Needed" rating, a "Plan for Improvement must be included specifying goals to be achieved by the employee to improve performance during a specified period of time." Rule 21.04 also provides that when an improvement needed rating is given, a new evaluation must be made within a period not to exceed six months, and that when an unsatisfactory rating is given "it must be accompanied by a discharge or reduction in those cases in which the employee is still in service."

The rules also provide that the employee must receive a copy of the report; (§21.06) that the employee may review his rating at any time with any of the persons who have signed the report or who have assisted in making the rating; (§ 21.07) and that if an employee receives an improvement needed rating, the employee may request a hearing before the Civil Service Commission, provided the employee first exhausts his departmental remedies of reconsideration. (§§ 21.14, 21.12.)

Rule 5, which governs hearings before the Civil Service Commission, provides that anyone adversely affected by any decision has a right to petition for a hearing (§ 5.01) and that a timely petition for hearing must be granted if the employee is discharged or reduced in rank or suspended for more than five days. (§ 5.03(a).) In all other cases, a hearing before the commission is discretionary with the commission. (§ 50.03(b).)

Rule 19.02 provides that a permanent employee may be discharged only after that employee has been presented in writing with the reasons for and the effective date of such discharge or reduction. The rule provides that the person "to be discharged or reduced shall be allowed 10 business days from date of service of said notice in which to reply thereto in writing and request a hearing before the Commission."

conform her social work technique to that required by the Bureau of Public Health Social Work; that she had been insubordinate to her supervisor and that she had threatened physical harm to fellow employees and caused strained relations with other staff members. These statements were supported by instances of such behavior. Attached to the performance evaluation was a plan for improvement. This plan stated that periodic conferences would be held to review her progress, and that the next meeting was scheduled for September 28, 1973; that she would be rated again at the end of the six-month period, and: "If at any time during the six-month plan for improvement you fail to demonstrate continuous progress in achieving goals, this plan will be terminated and you will be rated unsatisfactory and discharged."

The plan required petitioner to attend weekly supervisor-employee conferences, to review all new patients with her supervisor, to work with her supervisor to understand how she was to modify her approach to patients, to discuss in a cooperative manner any complaints received by her supervisor concerning her social work practice, and to attend conferences or sessions as approved by her supervisor.

Cynthia Baker requested petitioner to discuss the evaluation and plan on September 24, 1973. Petitioner refused to do so. On October 3, 1973, a young patient and her mother complained about petitioner's refusal to offer any service. Petitioner refused to discuss the matter with Cynthia Baker. On October 10, 1973, a teacher complained to Cynthia Baker concerning petitioner's treatment of a number of students. Petitioner would not discuss these complaints with Ms. Baker.

On October 18, 1973, Ralph R. Sachs, Deputy Director of the Department of Health Services, wrote petitioner a letter in response to a grievance filed by petitioner concerning her performance evaluation. Sachs informed petitioner that she had not complied with the requirement that the grievance be discussed with the employee's immediate supervisor. Sachs stated, "You have persistently refused to discuss it with her. You have been told on numerous occasions that Mrs. Baker is your immediate supervisor. Therefore, until you have discussed your grievance with your immediate supervisor, you may not proceed with the grievance."

On November 14, 1973, Cynthia Baker sent petitioner a lettergram stating that there would be a meeting in her office Tuesday, November 20, 1973, at 8:30 a.m. Petitioner received this lettergram but overlooked

it because she "had been receiving so many grams that it's just another gram, and I am sure I didn't pay much attention to it, . . ." She did not attend the meeting.

On November 20, Cynthia Baker telephoned petitioner and told her to come to her office. A Mr. Lathrem was also present. Petitioner testified that Mr. Lathrem "was about to offer me the letter of suspension and discharge, and I refused to accept it, because this was all very shocking, but I didn't get into any discussion with him, . . ."

■ We think that the September 1973 report of performance evaluation and plan of improvement which started the punitive action and which petitioner was repeatedly invited but refused to discuss, satisfied the "preremoval safeguards" of *Skelly.* Petitioner was specifically advised, as noted, that if at any time during the six-month plan for improvement she failed to demonstrate continuous progress in achieving goals, that the plan would "be terminated and you will be rated unsatisfactory and discharged." Petitioner was then accused of failing to conform her conduct in the succeeding months to the plan requirements and was repeatedly requested to discuss these shortcomings with her supervisor. She declined to do so, and thus waived any right to a further pretermination hearing.

We think *Skelly* requires no more. Indeed, it is difficult to figure out what more the County could have done to provide a forum for an employee who, despite specific charges and warnings, obdurately refused to discuss the matter with the appropriate personnel.

We recognize that in this case petitioner had a grievance pending at the time she was fired, and that the substance of the grievance was that her performance evaluation was erroneous and that Cynthia Baker had no authority to supervise her. The grievance procedures (fns. 2 and 5, *ante*) authorized a discretionary hearing by the Civil Service Commission, after departmental remedies had been exhausted. (Los Angeles County Civil Service Commission rule 5, et seq.) ■ Nothing in *Skelly,* however, suggests that an employee may not be fired while a grievance is pending: such a rule would permit an employee to stave off discharge forever, by filing and pursuing an endless chain of grievances. Rather, as quoted above, all that *Skelly* requires is the "right to respond . . . to the authority initially imposing discipline." (15 Cal.3d at p. 215.) Petitioner was afforded this opportunity, and thereafter was afforded an

opportunity to challenge that discharge before the Civil Service Commission, where she was permitted to, and did, raise all her grievances.

The judgment of the trial court is affirmed insofar as it denies petitioner reinstatement; that judgment is reversed insofar as it orders respondent County to pay petitioner her salary after November 20, 1973.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied September 21, 1977.