[Civ. No. 44163. First Dist., Div. Three. Apr. 25, 1979.]

MARY P. COLEMAN, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Defendant and Respondent.

**COUNSEL**

Andrew Thomas Sinclair for Plaintiff and Appellant.

Donald L. Reidhaar, Milton H. Gordon, Glenn R. Woods and Allen B. Wagner for Defendant and Respondent.

**OPINION**

**HALVONIK, J.**—Appellant was first employed as a clerk typist by respondent university in 1969. As early as December 1972, her supervisors were concerned about her attendance record, conferred with her about it, and in March 1973 sent her a memorandum complaining of the lack of noticeable improvement "in your sick leave or tardiness because of illness." In that same month, her performance evaluation noted that her "attendance record makes for unsatisfactory performance."

In August there was another conference between appellant and her supervisor and another memorandum about her "tardiness and sick leave

problem" and the lack of any improvement. The December performance evaluation stated that "if this absence continues, she will be dismissed."

There was some improvement but it was short lived. By late February of 1974 she was warned that her attendance "is again sliding" and her supervisors, by mid-April, warned that "unless this situation can be corrected and sustained, you will be subject to dismissal."

Shortly after that last warning, in June of 1974, appellant sustained an injury at work and received worker's compensation benefits. She was absent from work until August 17, 1974, when she was released to return to her regular employment. Her absences continued and her supervisors contacted the Worker's Compensation Fund in order to discover appellant's status. The fund replied that based upon the reports of her physician and her medical records, "Mary has been released to return to her regular work." A copy of that letter was transmitted to appellant along with a memorandum stating that failure to meet the expected levels of attendance would subject her to "disciplinary action up to and including dismissal." Memoranda critical of her record and warning her of the possibility of suspension or dismissal were sent to appellant in December of 1974 and February of 1975.

By memorandum dated May 19, 1975, appellant was informed of her dismissal effective June 2, 1975, signed by A. M. Bordin, the department head.

After her dismissal, appellant filed a grievance under the university procedures and a hearing was held on September 25, 1975. The hearing officer found that appellant's absenteeism was inexcusable and disruptive and did not recommend reinstatement. Chancellor Sooy approved the recommendation of the hearing officer and appellant was so notified by letter dated October 17, 1975. Appellant requested that the chancellor review his decision and then petitioned the president of the university who communicated his denial by letter dated November 24, 1976.

█ Appellant complains that the regents did not properly delegate their authority to adjudicate employment matters and that the hearing she was given was, consequently, unlawful. Appellant argues that "powers conferred upon public agencies which involve the exercise of judgment or discretion are in the nature of public trusts and cannot be surrendered or delegated to subordinates in the absence of statutory

authorization." (*California Sch. Employees Assn.* v. *Personnel Commission* (1970) 3 Cal.3d 139, 144 [89 Cal.Rptr. 620, 474 P.2d 436].) But since article IX, section 9 of the California Constitution provides that the regents have the power "to delegate to its committees or to the faculty of the university, or to others, such authority or functions as it may deem wise," such an authorization does exist. (And see *Smith* v. *Regents of University of California* (1976) 58 Cal.App.3d 397 [130 Cal.Rptr. 118]; *Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854 [72 Cal.Rptr. 756].) The Board of Regents in its standing orders appointed the president as executive head of the university with "full authority and responsibility over the administration of all affairs and operations of the university" and the power to delegate any of the duties of the office. It also authorized the president "to appoint, determine compensation, promote, demote, and dismiss university employees. . . ." The president, exercising that authority, promulgated regulations establishing the administrative hearing process employed to determine grievances. The delegation of authority was consonant with the law and so was appellant's hearing.

■ Appellant also complains that she was dismissed without the "preremoval" safeguards mandated by *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] which are, of course, applicable to the University of California. (*Mendoza* v. *Regents of University of California* (1978) 78 Cal.App.3d 168 [144 Cal.Rptr. 117].)

Respondent replies that the "preremoval safeguards" were satisfied by the memoranda to appellant warning her of dismissal and the many conferences that had been held between her and her supervisors on the subject of her attendance. Appellant certainly was given adequate notice of dissatisfaction with her performance and the reasons for that dissatisfaction. She was not, however, notified that she had an opportunity to argue against her dismissal and there is nothing in the record to indicate that she took the opportunity to do so. She testified, and there is nothing to contradict it, that the conferences were for the purpose of warning her, not to give her an opportunity to present her views on the question.[1] The conferences, moreover, occurred before the notice of intention to dismiss her. Unexecuted threats of dismissal are a common experience, as this case demonstrates. What *Skelly* requires is unambiguous warning that

---

[1]And since appellant attended the conferences, it cannot be said that she waived an opportunity to present her side of the case. (See *Bussey* v. *Los Angeles County Civil Service Com.* (1977) 72 Cal.App.3d 912 [140 Cal.Rptr. 394].)

matters have come to a head, coupled with an explicit notice to the employee that he or she now has the opportunity to engage the issue and present the reasons opposing such a disposition. Moreover, the opportunity to respond must come *after* the notice of intention to dismiss. The Supreme Court has specifically held that a rule allowing an employee to review his or her rating at any time with the person who signs it "is by no means 'the right to respond' before a reasonably impartial, noninvolved reviewer that is implied" in *Skelly*. (*Williams* v. *County of Los Angeles* (1978) 22 Cal.3d 731, 736-737 [150 Cal.Rptr. 475, 586 P.2d 956]; and see *Barber* v. *State Personnel Bd.* (1976) 18 Cal.3d 395 [134 Cal.Rptr. 206, 556 P.2d 306].)[2]

■ The disability that appellant suffered because of the *Skelly* violation terminated when she had the opportunity to respond at the administrative hearing. That was her opportunity to give her side of the story "before a reasonably impartial, noninvolved reviewer . . ." (*Williams* v. *County of Los Angeles, supra,* 22 Cal.3d at p. 737) who had "the authority to . . . recommend the final decision." (*Skelly* v. *State Personnel Bd., supra,* 15 Cal.3d at p. 214.)

When the chancellor adopted that recommendation and so informed appellant, she was lawfully terminated. She is entitled to back pay only up to the point where she was informed of the chancellor's decision.

■ Respondent has expressed a desire to offer evidence in mitigation of damages should appellant prevail. Damages for a *Skelly* violation are not punitive but are designed to compensate the employee for wages lost during a period when a discharge is invalid. Accordingly, evidence in

[2]"Respondent argues that the due process requirements of *Skelly* and the requirements of Rule 61 were satisfied by the informal procedures employed prior to the formal notice of December 30. Appellant had been interviewed by a representative of the hospital and had an opportunity at that time to rebut the charges, which he did. Also, the hospital personnel officer had twice telephoned Mr. Knopp to advise him regarding the pending action but the calls were not returned. In sum, respondent contends that informal notice and opportunity to respond satisfy the requirements of due process as expressed in *Skelly.* We do not agree. *Skelly* rejected the notion that due process requirements are satisfied by oral notice of the charges and a post hoc opportunity to answer the charges. (15 Cal.3d at p. 215.) Further, in *Barber* v. *State Personnel Bd., supra,* 18 Cal.3d 395, the court held a dismissal invalid for lack of advance notice even though the employee had two prior discussions with his supervisors concerning the incident leading to the dismissal." (*Coburn* v. *State Personnel Bd.* (1978) 83 Cal.App.3d 801 at p. 806 [148 Cal.Rptr. 134].)

mitigation of damages is quite appropriate and, on remand, respondent may introduce such evidence.

The judgment is reversed and the matter is remanded for proceedings consistent with the views expressed herein.

White, P. J., and Scott, J., concurred.

A petition for a rehearing was denied May 25, 1979, and appellant's petition for a hearing by the Supreme Court was denied August 1, 1979.