Filed 4/5/24; Certified for Publication 4/23/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JUNE LaMARR, | C097235 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2015-00181352-CU-OE-GDS) |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | |
| Defendant and Respondent. | |

After performance problems and friction with her supervisor, plaintiff June LaMarr temporarily transferred to a new department at the University of California Davis Medical Center, a unit of defendant the Regents of the University of California (Regents). LaMarr was later given the option to move back into her prior position, but was told she would face discipline, including possible termination, if she did.  LaMarr ultimately accepted a permanent position in the new department for less pay and sued the Regents alleging it violated her due process rights by not providing her a hearing under *Skelly v.*

1

*State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*) prior to her demotion.  After a court trial, the trial court found against LaMarr.  LaMarr now appeals contending the trial court's finding lacked substantial evidence.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The evidence introduced at trial established LaMarr was a medical office services coordinator (coordinator) level V at the University of California Davis Medical Center's cancer center in 2014.  LaMarr's supervisor, Walter Knowles, suspended her for three days in July 2014 for performance issues.  Performance issues persisted after the suspension, however, and Knowles subsequently prepared, but did not issue, a "Letter of Intent to Dismiss" LaMarr in August 2014.  Knowles's supervisor, Chris Jackson, testified at trial he thought this was an unusually expedited discipline procedure and it concerned him.  LaMarr had also told Jackson she was having difficulties with Knowles.

Jackson consequently sought a transfer for LaMarr to a different department to defuse the situation.  Jackson testified, "There were no [coordinator level] V positions available," but he found a coordinator level III position at another department, the MIND Institute (Institute), that Jackson offered to LaMarr on a "temporary" basis at her normal level V salary.  Jackson did not inform LaMarr of the letter of intent to dismiss drafted by Knowles.  In September 2014, LaMarr e-mailed Jackson she "would like to move forward on temporarily moving from the [c]ancer [c]enter."

In an e-mail chain spanning between February and March 2015, Jackson e-mailed LaMarr confirming that her supervisor at the Institute was pleased with LaMarr's performance and was comfortable making the role permanent.  On March 10, 2015, Jackson e-mailed LaMarr explaining they "were seeking to be able to keep [LaMarr's] current [level V] salary if possible" but unfortunately, if she stayed at the Institute she would be a coordinator level III with a lower salary.  Jackson then stated:  "The two basic options we have now are:  [¶]  1) Remain at the [Institute] as a [coordinator level ]III with a max salary of $25.49 (top of the range)[; or]  [¶]  2) [m]ove back to the [c]ancer [c]enter

2

as a [coordinator level ]III with a max salary of $25.49[.] [¶] The only other option would be to go back to the [c]ancer [c]enter as a [coordinator level ]V [supervisor], but you will be subject to the pending action that was put on hold during this trial period." LaMarr told Jackson and an employee and labor relations supervisor she was surprised to learn there was a pending action. The employee and labor relations supervisor responded, "[W]e have no documentation. The [i]ntent was never issued." On March 16, 2015, LaMarr e-mailed Jackson she "would love to remain" at the cancer center, "[h]owever, [she] c[ould ]not return to a[] hostile environment where every decision [she] make[s] may be questioned or grounds for dismissal. Therefore, after full consideration for [her] health and stress, [she] w[ould] remain at the [Institute]."

LaMarr testified the negative performance reviews in 2014 surprised her and she did not want to transfer to the Institute. When she received the March 10, 2015 e-mail, she was surprised she could return to the cancer center only as a coordinator level III and felt under duress and forced to stay at the Institute. She testified, "I had two choices, [be] demoted or fired." But she admitted she knew she would have had a right to a *Skelly* hearing if she was terminated. Jackson also testified LaMarr would have been given a *Skelly* hearing if Knowles had moved forward with issuing a notice of intent to dismiss LaMarr.

On August 30, 2022, the trial court issued its judgment, finding against LaMarr. The court framed the controverted issue as: "Whether Ms. LaMarr was deprived of due process on March 10, 2015, when, without offering her a pre-deprivation *Skelly* hearing, defendant proposed to either transfer her to a non-supervisory position with reduced pay (at the . . . Institute or the [c]ancer [c]enter) or return her to her higher paying supervisory position at the [c]ancer [c]enter and face possible termination proceedings." (Fn. omitted.) The court answered this in the negative for two reasons. First, the Regents never issued a notice of intent to dismiss. Second, though LaMarr honestly believed she was under duress, "no legal authority supports her position that a subjective feeling of

3

duress triggers due process protections." Thus, LaMarr "failed to prove by a preponderance of the evidence that [the Regents] deprived her of her due process."

LaMarr appeals.

DISCUSSION

LaMarr argues the trial court's finding that the Regents did not violate her due process lacks substantial evidence. LaMarr contends she "was not informed of any adverse consequences of accepting a transfer, nor was she told that she would not be able to return as a [coordinator level] V to the [c]ancer [c]enter without facing a dismissal. Her acceptance of Jackson's proposal for a transfer was not voluntary." And LaMarr eventually accepted the demotion because "she understood that she had only three options—two demotions or a dismissal." We disagree.

Our Supreme Court found in *Skelly*, "[T]he California statutory scheme regulating civil service employment confers . . . 'permanent employee[s]' [with] a property interest in the continuation of [their] employment [that] is protected by due process." (*Skelly*, *supra*, 15 Cal.3d at p. 206.) Before such an employee may be subject to an adverse employee action, due process requires, at a minimum, "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id*. at p. 215.) "What *Skelly* requires is unambiguous warning that matters have come to a head, coupled with an explicit notice to the employee that he or she now has the opportunity to engage the issue and present the reasons opposing such a disposition. Moreover, the opportunity to respond must come *after* the notice of intention to dismiss." (*Coleman v. Regents of University of California* (1979) 93 Cal.App.3d 521, 525-526.) California law defines " 'adverse action' " to include "dismissal, demotion, suspension, or other disciplinary action." (Gov. Code, § 19570.)

"Substantial evidence is evidence that is 'of ponderable legal significance,' 'reasonable in nature, credible, and of solid value,' and ' "substantial" proof of the

4

essentials [that] the law requires in a particular case.' " (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1006.) " '[C]ircumstantial evidence and any reasonable inferences drawn from that evidence' may constitute substantial evidence." (*People v. Grant* (2020) 57 Cal.App.5th 323, 331.)

There is substantial evidence the Regents did not violate LaMarr's due process rights because she was never notified of an intent to terminate and any demotion was voluntary. Knowles did believe LaMarr had performance issues and he began considering a termination. Knowles even drafted a letter of intent to dismiss LaMarr. But the evidence establishes Knowles never issued this letter. Instead, Jackson preempted Knowles by allowing LaMarr to possibly avoid facing termination through a transfer. Knowles's unissued letter, therefore, did not trigger a right to *Skelly* proceedings.

LaMarr's new permanent position at the Institute was a demotion, which is an adverse result, but this transfer occurred without a denial of due process. Due process is not required where "the employee 'has voluntarily surrendered the property interest upon whose [*sic*] existence the procedural rights depend.' " (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1115.) The evidence here supports the trial court's finding that LaMarr voluntarily accepted the demotion in 2015. Jackson gave LaMarr three options, and though two were with lower pay, Jackson tried to find comparable roles with the same pay but could not. LaMarr later e-mailed, "[A]fter full consideration for my health and stress, I will remain at the [Institute]." LaMarr therefore voluntary chose a lower paying position rather than returning to the cancer center. Though this was clearly a difficult choice for LaMarr, a difficult choice is not the same as an involuntary choice. (Cf. *People v. Urfer* (1979) 94 Cal.App.3d 887, 892 ["Assuming [the] appellant was reluctant or 'unwilling' to change his [or her] plea, such state of mind is not synonymous with an involuntary act"].) Thus, there was substantial evidence LaMarr's demotion did not violate due process.

LaMarr maintains Jackson obtained her acquiescence involuntarily, by providing her incomplete information and false promises when he first offered LaMarr the transfer in 2014.  But even if LaMarr was originally not aware the transfer at her normal pay was temporary, she was given the option in 2015 to return to the status quo at the cancer center with her same title and with her same pay; LaMarr chose not to return.  The final decision at issue here in 2015 was consequently made with full "knowledge of the consequences."  (*Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.)

This decision alone also did not trigger her right to a *Skelly* hearing.  LaMarr finally contends she "was owed the pre-removal procedures (i.e., due process) before having to choose between suffering a decrease in pay rate and grade (demotion) or a dismissal."  Otherwise, LaMarr asserts, "By simply not issuing an [*sic*] [n]otice of [i]ntent, [the] Regents can avoid any due process requirement."  LaMarr misunderstands the *Skelly* requirement.  The Regents does not violate due process until it takes an adverse action without providing the *Skelly* safeguards.  This necessarily means the safeguards must be provided before the deprivation.  (*Mendoza v. Regents of University of California* (1978) 78 Cal.App.3d 168, 172 [a civil employee may be deprived of his or her property interest in employment "only if, *prior* to his [or her] dismissal, certain procedural safeguards are observed"].)  But a *Skelly* hearing is not required if there has not been a deprivation or an issued intent to take an adverse action.  (*Coleman v. Regents of University of California*, *supra*, 93 Cal.App.3d at p. 526 ["the opportunity to respond must come *after* the notice of intention to dismiss"].)  LaMarr provides no legal support for the proposition underlying her argument that employees are afforded due process as soon as an employer considers an adverse action; this would dramatically expand *Skelly*.

Ultimately, it was LaMarr's prerogative to either risk termination and receive a *Skelly* hearing, relief she seeks with this lawsuit, or voluntarily accept the transfer and not have a *Skelly* hearing.  Under the facts of this case, the law did not entitle her to both.  We

6

consequently conclude there was substantial evidence supporting the trial court's finding that the Regents did not deprive LaMarr of due process.

## DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


/s/_____
ROBIE, Acting P. J.



We concur:



/s/_____
KRAUSE, J.



/s/_____
MESIWALA, J.

Filed 4/23/24

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----


| | |
|---|---|
| JUNE LAMARR, | C097235 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2015-00181352-CU-OE-GDS) |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |


APPEAL from a judgment of the Superior Court of Sacramento County, Steven M. Gevercer, Judge. Affirmed.

Law Firm of Joanne Delong and Joanne Delong for Plaintiff and Appellant.

Horvitz & Levy, Jason Y. Siu, H. Thomas Watson; Sloan Sakai Yeung & Wong, Timothy G. Yeung and Ivan Delventhal for Defendant and Respondent.

THE COURT:

The opinion in the above-entitled matter filed on April 5, 2024, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.


BY THE COURT:


/s/
ROBIE, Acting P. J.


/s/
KRAUSE, J.


/s/
MESIWALA, J.