Filed 7/28/25  Parks v. City of Los Angeles CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MICHAEL PARKS, | B334795 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 22STCP02303) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed.

Law Offices of Gregory G. Yacoubian and Gregory G. Yacoubian for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs and Merete Rietveld, Deputy City Attorneys, for Defendants and Respondents.

_____

Michael Parks was an officer with the Los Angeles Police Department when the COVID-19 pandemic hit. In 2021, the City of Los Angeles (City) issued policies requiring that employees be vaccinated against the virus or request a medical or religious exemption. Those who requested an exemption were required to sign a notice acknowledging that they were to submit to COVID-19 testing at their own expense while their requests were pending, and that they would be reimbursed if granted an exemption. Parks refused to sign the notice based on his understanding that it was illegal under the Labor Code for the City to require him to pay for his own testing. He also refused to adhere to the testing protocol. He was placed on paid leave pending a Board of Rights (Board) hearing. After the Board found him guilty of refusing to comply with the COVID-related mandates, his employment was terminated. Parks then filed a writ of mandate seeking reinstatement of his job based on a lack of due process and the illegality of the City's requirement that he pay for COVID testing. The trial court denied the petition. On appeal, Parks contends he was deprived of due process and his termination violated public policy because the City's requirement he pay for his own testing violated Labor Code section 2802. We reject Parks's contentions and affirm.

**FACTS AND PROCEDURAL BACKGROUND**

**1.    Facts**

In August 2021, the Los Angeles City Council passed Ordinance No. 187134 (the Ordinance), requiring as a "condition[] of City employment" that all employees be vaccinated against COVID-19 by October 19, 2021, in order "[t]o protect the City's workforce and the public that it serves." It also allowed employees to request a medical or religious exemption by a

2

certain date. An exempted employee would be subject to testing at no cost to them.

On October 1, 2021, Parks requested a religious exemption from the City's vaccination requirements.

Between August 6 and October 18, 2021, the City negotiated with labor organizations on the consequences of noncompliance with the conditions of employment around COVID-19. After the parties reached a stalemate, the City issued its "Last, Best and Final Offer" (LBFO) on October 14, 2021, which the mayor then implemented "effective immediately."

The LBFO stated: "Employees shall be deemed non-compliant with the vaccination mandate if they have failed to become fully vaccinated **and** have not filed an intent to seek a medical or religious exemption by October 20, 2021. [¶] An employee who does not submit proof of their full vaccination status by October 20, 2021 and has not submitted a request for exemption will be issued a Notice of Mandatory COVID-19 Vaccination Policy Requirements ("Notice") . . . . [¶] Each employee issued a Notice shall be required to sign the Notice and to comply with its terms as outlined above and herein. Failure to sign or comply with the requirements of the Notice shall constitute failure to meet a condition of employment and shall result in appropriate and immediate corrective action."

The LBFO further provided that "an employee[ ] who [is] not fully vaccinated and who [has] agreed to the terms of the Notice" shall be subject to five terms: (1) the employee must use his or her own time "to manage an absence . . . due to COVID-19," (2) must test for COVID-19 twice per week (3) through the City's chosen vendor, (4) must reimburse the City $260 per pay period "through a . . . payroll deduction," and (5) "shall test on their own

3

time." "If an employee does not show proof of full compliance by the close of business on December 18, 2021, the employee will be subject to corrective action."

Under the LBFO, employees who filed a timely "intent to seek a medical or religious exemption" "will be considered compliant with the Ordinance during the pendency of the exemption and accommodation process. Accordingly, the City shall not issue the Notice and/or take employment action against an employee who is duly subject to the exemption and accommodation procedures. [¶] Employees who have reported a vaccination status of 'not vaccinated' and who file exemption paperwork and are awaiting the result of the City's evaluation process shall be subject to the same terms applicable to employees who are not fully vaccinated and who have received a Notice, including and limited to items 2, 3, 4, and 5 as stated above."

The next paragraph of the LBFO states, "Each employee who is required to test while awaiting the determination by the City of their exemption request shall be required to sign a Notice to comply with its terms as outlined above and herein. Failure to sign and fulfill the conditions of the Notice shall constitute failure to meet a condition of employment and shall result in appropriate and immediate corrective action."

On October 28, 2021, the mayor issued a memo directing all department heads to implement the LBFO, and to issue a "Notice of Mandatory COVID-19 Vaccination Policy Requirements—While Awaiting an Exemption/Appeal Determination" to each unvaccinated employee who has filed an exemption form. Such employees would then have 24 hours to review and sign the Notice. An employee who refuses to sign the Notice would be

4

subject to the protocols in the LBFO and would receive "an invoice for the cost of testing." However, the Notice also advised that "if [the employee's] exemption request . . . is granted, the City will refund the deduction or payments . . . for the biweekly testing." Employees who refused to comply with the COVID-19 protocols would be subject to corrective action beginning December 19, 2021. "An employee that remains out of compliance shall be placed off duty without pay pending service of a [*Skelly*] package that includes a Notice of Proposed Separation. Sworn employees shall be subject to applicable Board of Rights proceedings."

On November 4, 2021, Parks's commanding officer, Captain Ahmad Zarekani, served a Notice on Parks and explained its terms to him. Parks refused to sign the form, and Zarekani wrote at the bottom of the notice, "Refused to sign 11/4/21, refuse/do not authorize auto deductions or invoice." Parks also refused to test through the City's vendor or create an account with the vendor. He believed that it was illegal for the City to require him to pay for mandatory COVID-19 testing.

On December 22, 2021, Zarekani served Parks with a "Complaint Adjudication Form" to notify Parks that he was proposing to the Chief of Police that Parks be directed to a Board of Rights. The form advised Parks that he had until December 27, 2021, to respond.

On December 23, 2021, the Department served Parks with a complaint containing one count: "On or about December 21, 2021, you, while on-duty, failed to comply with the requirements of the Notice of Mandatory COVID-19 Vaccination Policy Requirements, a condition of employment." Chief of Police Michel Moore directed Parks "to a Board of Rights with the

5

proposed penalty of removal from your employment with the Department." He also "temporarily relieve[d]" Parks from duty as a police officer effective December 24, 2021, and advised him that he "shall not suffer a loss of compensation for thirty calendar days after the date on which you were served with the charge(s)."

On December 28, 2021, Parks signed a form to waive the 30-day time limit within which a Board hearing must generally be held in order "to allow [his] attorney time for preparation."

On March 15, 2022, the Board convened a hearing that lasted three days. It found that Parks had violated the Ordinance by refusing to sign the notice, state his vaccination status, or participate in mandatory testing with the City's vendor. The Board found that Parks "effectively chose to be placed off duty pending pre-separation due process." It also rejected Parks's assertion he did not receive due process, reasoning that "the Board of Rights itself constitutes a full and fair hearing," and "Parks was afforded every opportunity to . . . present fully his . . . case." Parks was removed from his position as police officer effective January 23, 2022.

## II.    Procedural History

On June 17, 2022, Parks filed a petition for writ of mandate against the City and the chief of police under sections 1085 and 1094.5 of the Code of Civil Procedure to recover his position with backpay based on allegations that he was deprived of due process and that the Notice he refused to sign was void because Labor Code section 2802 renders illegal the requirement that he pay for testing while his vaccination exemption request was pending. The City filed a demurrer, and the trial court sustained it insofar as Parks's petition was based on section 1085 of the Code of Civil Procedure.

6

The parties fully briefed the petition, and the trial court held a hearing on August 22, 2023, before taking the matter under submission. Parks filed an ex parte motion to augment the record. At the ensuing hearing, the trial court denied the motion on an ex parte basis (and ultimately denied it altogether) but set it for hearing on October 19, 2023. The court also deemed the petition for writ of mandate "to no longer be under submission," ordered the parties to file supplemental briefs on certain issues, and scheduled a further hearing for the same date.

The trial court held the October 19, 2023 hearing and again took the matter under submission. It then issued a ruling denying Parks's petition on the grounds that he failed to explain how he was prejudiced by any purported due process violation; Labor Code section 2802 does not apply to invalidate the Notice; and Parks failed to sign the Notice required for his continued employment.

## DISCUSSION

Because this appeal presents issues of law and statutory interpretation, our review is de novo. (*Brown v. City of Los Angeles* (2002) 102 Cal.App.4th 155, 168; *Stone v. Alameda Health System* (2024) 16 Cal.5th 1040, 1052 (*Stone*).)

## 1.    Parks Received Due Process

In *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 206 (*Skelly*), our Supreme Court recognized that "the California statutory scheme regulating civil service employment confers upon an individual who [is a] 'permanent employee' a property interest in the continuation of his employment which is protected by due process." (*Ibid.*) Before such an employee may be subject to disciplinary action, due process requires, at a minimum, "notice of the proposed action, the reasons therefor, a copy of the

7

charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215; accord, *LaMarr v. Regents of University of California* (2024) 101 Cal.App.5th 671, 675 (*LaMarr*).) Before being subjected to adverse action, an employee must receive an " 'unambiguous warning that matters have come to a head, coupled with an explicit notice to the employee that he or she now has the opportunity to engage the issue and present the reasons for opposing such a disposition.' " (*LaMarr*, at p. 675, quoting *Coleman v. Regents of University of California* (1979) 93 Cal.App.3d 521, 525–526.)

An employer subject to *Skelly* requirements "does not violate due process until it takes an adverse action without providing the *Skelly* safeguards." (*LaMarr*, *supra*, 101 Cal.App.5th at p. 677.) California defines " ' "adverse action" ' " to include " 'dismissal, demotion, suspension, or other disciplinary action.' " (Gov. Code, § 19570; *LaMarr*, at p. 675.) Actions that do not involve some substantial deprivation of pay or benefits, such as the mere "issuance of a written reprimand" or " '5 days' suspension,' " do not trigger *Skelly* requirements. (*Stanton v. City of West Sacramento* (1991) 226 Cal.App.3d 1438, 1442; *Civil Service Assn. v. City and County of San Francisco* (1978) 22 Cal.3d 552, 560.)

Here, Parks received due process because he was not disciplined with "adverse action" until after he had fully presented his defense at the three-day Board hearing, for which he and his counsel took two months to prepare. His assertion that "he was relieved of duty and taken off the payroll" with "no opportunity at all to" respond is not borne out by the record. The City served Parks with the complaint on December 23, 2021, and

relieved him of duty pending his Board hearing, but did so *with* pay for 30 days. Then, on December 28, 2021, Parks waived his right to have a hearing within 30 days to allow his attorney more time to prepare his case. Thus, he was not deprived of pay or benefits (let alone in any substantial way) in the time between being charged with misconduct and having a full and fair opportunity to be heard. Any loss of pay he incurred in the meantime resulted from his own voluntary waiver of his right to a speedy hearing. (See *LaMarr*, *supra*, 101 Cal.App.5th at p. 676 [no due process required where the employee " ' "has voluntarily surrendered the property interest" ' "].)

We also note that even had Parks been wrongfully relieved and deprived of pay without due process before the Board made its decision, the remedy would not be reinstatement of his employment or institution of a new proceeding—rather, "damages [would] consist only of back pay for the period discipline was improperly imposed, i.e., from the date of the actual discipline to the time discipline was validated by the hearing." (*Barber v. State Personnel Bd.* (1976) 18 Cal.3d 395, 402.)

## 2.     Labor Code section 2802 does not apply to the City and does not render the Notice void

Parks argues that his termination based on his refusal to sign the Notice or comply with its terms was improper because the requirement in the Notice that he pay for his own COVID-19 tests (while his vaccination exemption request was pending)

violated Labor Code sections 2802 and 2804.[1]  (See *D'Sa v. Playhut, Inc.* (2000) 85 Cal.App.4th 927, 929.)

Labor Code section 2802 provides, in relevant part, that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in . . . the discharge of his or her duties, or of his or her obedience to the directions of the employer."  (Lab. Code, § 2802, subd. (a).)  A related provision, section 2804 of the Labor Code, expressly prohibits the waiver of rights afforded by section 2802 and renders any such waiver "null and void."

Recently, another division of this district considered whether Labor Code section 2802's mandate that "employers" indemnify their employees applies to public as well as private entities.  (*Krug v. Board of Trustees of California State University* (2025) 110 Cal.App.5th 234, 241.)  The *Krug* court considered various factors—including that the Legislature had modified the term "employer" in neighboring sections with the phrase, " 'whether public or private' "—and concluded that in failing to explicitly include public employers, the Legislature intended to exclude them from the ambit of Labor Code section 2802[2] (*Krug*,

_____

[1] As the trial court observed, the record does not support the Board's finding that Parks failed to disclose his vaccination status to the City.

[2] The *Krug* court had initially reached the same conclusion after employing an interpretive maxim that looked to whether a statute's application to a government entity would infringe on its sovereign governmental powers.  (*Krug v. Board of Trustees of California State University* (2023) 94 Cal.App.5th 1158, vacated and cause remanded for further consideration in light of *Stone*, *supra*, 16 Cal.5th at p. 1056.)  Thereafter, our Supreme Court in *Stone* found "positive indicia" of legislative intent to exclude

at p. 243 [listing sections 2806, 2807, 2808, and 2809 as examples]; see also *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190 ["The specific enumeration of . . . governmental entities in one context, but not in the other, weighs heavily against a conclusion that the Legislature intended to include" them]; *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market LLC* (2011) 52 Cal.4th 1100, 1108 [" ' "where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant to show that a different legislative intent existed with reference to the different statutes" ' "]; *Stone*, *supra*, 16 Cal.5th at p. 1055 [" 'the Legislature is capable of bringing government entities within the scope of specific legislation when it intends to do so' "].)

Parks attempts to distinguish *Krug* from this case because that case involved an employee's right to reimbursement, not vice versa, but he fails to explain why the mechanism of the "expenditure" makes any difference to the underlying reasoning, or why *Krug*'s holding that "employer" in section 2802 does not include public entities should not apply with equal force here. Parks also argues that *Krug* did not refer to section 2804, which states: "Any contract . . . made by any employee to waive the benefits of this article or any part thereof, is null and void." This

public employers from Labor Code wage and hour provisions, rendering inapplicable the "sovereign powers" principle. (*Stone*, at p. 1054 [" 'While the sovereign powers' principle can help resolve an unclear legislative intent, it cannot override positive indicia of a contrary legislative intent' "].) The Court then vacated the initial opinion in *Krug v. Board of Trustees*, and remanded for further consideration in view of *Stone*. (*Krug*, *supra*, 110 Cal.App.5th at p. 238.)

argument ignores that section 2804 extends only to "the benefits of this article," and does not substantively expand on those benefits.

To support his position that Labor Code section 2802 includes public employers, *Parks* cites Labor Code section 3351, which defines "*employee*" to include "[a]ll elected and appointed paid public officers." (Lab. Code, § 3351, subd. (b).) We are not persuaded. This division of the Labor Code concerns workers' compensation and insurance, which is a different subject matter. More important, Parks's argument ignores that the neighboring section 3300 of the Labor Code specifically defines "employer," to include "[e]ach county, city, district, and all public and quasi public corporations and public agencies therein." (Lab. Code, § 3300, subd. (a).) This part of the Labor Code thus bolsters, rather than undermines, the reasoning set forth in *Krug*, which we adopt.

Finally, Parks cites *In re Acknowledgment Cases* (2015) 239 Cal.App.4th 1498 for the proposition that Labor Code section 2802 applies to public employers. As the *Krug* court observed, that case addressed "whether the costs of employee training qualified as 'necessary expenditures or losses incurred by the employee' in direct consequence of the discharge of the employee's duties"; it did *not* address the issue of "whether section 2802 applies to public as opposed to only private employers." (*Krug*, *supra*, 110 Cal.App.5th at p. 256.) "Cases are not authority for propositions not considered." (*Ibid*.)

What is more, Labor Code section 2802 requires employers to indemnify employees only for *necessary* expenditures and losses (*Gattuso v. Harte-Hanks Shoppers, Inc.* (2007) 42 Cal.4th 554, 567; *USS-Posco Industries v. Case* (2016) 244 Cal.App.4th

12

197, 205; *Los Angeles Police Protective League v. City of Los Angeles* (1994) 27 Cal.App.4th 168, 177), and we are not persuaded that the testing costs imposed on employees whose exemption requests were pending qualify as "necessary" expenditures or losses.  An employee could avoid the expenditure by simply getting vaccinated; or, if the medical or religious exemption request were found to be legitimate, the employee would suffer no "loss" or "expenditure" because he or she would receive a refund of any amount paid for the testing.[3]

## DISPOSITION

The judgment is affirmed.  The City is awarded its costs on appeal.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

---

[3] The parties did not brief this issue, but it is not necessary for our disposition anyway.